IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| M.J. b/n/f MICHAEL JAEGER, SR. and STACIE JAEGER, INDIVIDUALLY a/n/f of M.J., A MINOR, | ) ) ) ) | |
| | ) | CV. NO. SA-10-CV-00978-DAE |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| MARION INDEPENDENT SCHOOL DISTRICT, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER ADOPTING IN PART AND VACATING IN PART MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

Before the Court is the Report and Recommendation of Magistrate

Judge Pamela A. Mathy (doc. # 53) granting in part and denying in part Defendant

Marion Independent School District's Motion for Summary Judgment ("MSJ,"

doc. # 46).  On April 18, 2013, the Court heard argument from the parties on the

original Motion for Summary Judgment and on Plaintiffs' objections to the

Magistrate Judge's Report and Recommendation.  After careful consideration, and

for the reasons given below, this Court **ADOPTS IN PART** and **VACATES IN**

**PART** the Magistrate Judge's Report and Recommendation, **DISMISSES**

1

Plaintiffs' § 1983 claim, and **DENIES** Defendant's Motion for Summary

Judgment.

BACKGROUND

Plaintiff M.J. is an individual with disabilities, including diagnoses of

bipolar disorder and ADHD.  ("Compl., Doc. # 1 ¶ 77.)  His disabilities cause him

to engage in erratic behavior and lead to panic attacks, paranoia, and

hallucinations.  (Id. ¶ 79.)  According to Plaintiffs, M.J. was the target of verbal

and physical harassment and bullying from 2005 to 2009 while a student in the

Marion Independent School District ("MISD" or "Defendant").  (Id. ¶ 81.)

Plaintiffs claim that MISD consistently failed to address or remedy the harassment

and bullying (id. ¶ 174), and the abuse caused M.J. to become anxious, depressed,

angry and even suicidal (id. ¶ 171).

On March 10, 2009, another student, A.B., punched M.J. in the face.

(Id. ¶ 162.)  M.J. was taken to the hospital, where a CT Scan revealed that his sinus

was fractured.  (Id. ¶ 164.)  M.J. underwent surgery to remove bone fragments and

a blood clot from his sinus.  (Id.)  After this incident, which Plaintiffs describe as

"the most serious of [the] attacks at school" (id. ¶ 164), M.J.'s parents enrolled him

in a private school for the 2009–2010 school year (id. ¶ 183).

On September 28, 2009, Plaintiffs filed for an administrative hearing

2

pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).  (MSJ Ex. 5.)  On December 20, 2009 the § 504 Hearing Officer issued a decision in favor of MISD, finding that MISD took reasonable steps to protect M.J. from harassment and bullying.  (Id.)  In January 2010, Plaintiffs filed for a due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.  (MSJ Ex. 4.)  On April 15, 2010, Plaintiffs and MISD entered into a Settlement Agreement regarding Plaintiffs' IDEA claims.  (MSJ Ex. 5.)  The Settlement Agreement provided that Plaintiffs released MISD from any claims or suits arising under the IDEA.  (Id.)  In the Settlement Agreement, the parties acknowledged that M.J. exhausted his administrative remedies under the IDEA "exclusively in connection with claims under Section 504 of the Rehabilitation Act of 1973 alleging disability based discrimination and/or disability based harassment. . . ."  (Id.)  The parties agreed that the acknowledgment of exhaustion did not extend to any claim concerning M.J.'s right to a Free Appropriate Public Education ("FAPE") under § 504 or the IDEA.  (Id.)

On December 7, 2010, Plaintiffs filed the instant lawsuit against MISD, MISD School Board President Victor Contreras ("Contreras"), and MISD Superintendent James Hartman ("Hartman").  Plaintiffs asserted causes of action pursuant to § 504 of the Rehabilitation Act of 1973 and for violations of M.J.'s

Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.  (Compl. ¶¶ 185–188, 191–193.)  On February 24, 2011, the Court dismissed Defendants Contreras and Hartman.  (Doc. # 4.)  On August 10, 2012, MISD filed a Motion to Exclude the Expert Testimony of Kelly Hetzer.  (Doc. # 38.)  On August 13, 2012, the case was referred to Magistrate Judge Pamela A. Mathy (doc. # 39), who granted the Motion to Exclude on August 31, 2012 (doc. # 44).

On October 15, 2012, MISD filed the Motion for Summary Judgment currently before the Court.  ("MSJ," Doc. # 46.)  On October 30, 2012, Plaintiffs filed a Response in Opposition to MISD's Motion for Summary Judgment. ("Opp.," Doc. # 50.)  On November 12, 2012, MISD filed a Motion to Strike and Objections to Plaintiffs' Summary Judgment Evidence (doc. # 51), as well as a Reply in further support of its Motion for Summary Judgment ("Reply," doc. # 52).  On December 12, 2012, the Magistrate Judge issued a Report and Recommendation, recommending that MISD's Motion to Strike be denied and the Motion for Summary Judgment be granted in part and denied in part.  ("R&R," Doc. # 53.)

On December 26, 2012, Plaintiffs filed an Objection to the Report and Recommendation ("Obj.," doc. # 56), to which MISD responded on January 9, 2013 (doc. # 59).  On March 25, 2013, Plaintiffs filed an Advisory to the Court,

alerting the Court to a recent Fifth Circuit opinion that discussed some of the issues presented in this case, <u>Stewart v. Waco Independent School District</u>, 711 F.3d 513 (5th Cir. 2013).  (Doc. # 63.)

On April 17, 2013, Plaintiffs filed an Appendix to their Objection to the Report and Recommendation.  (Doc. # 66.)  Defendant was given an opportunity to respond, and filed a Supplement to its Motion for Summary Judgment on April 26, 2013.  (Doc. # 68.)

<u>STANDARDS OF REVIEW</u>

I.    <u>Review of a Magistrate Judge's Report and Recommendation</u>

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  <u>See</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Any party may contest the Magistrate Judge's findings by filing written objections within fourteen days of being served with a copy of the Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.  <u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."

Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles

v. Wainwright, 677 F.2d 404, 410 n. 8 (5th Cir. 1982), overruled on other grounds

by Douglass v. United States Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996)).

Findings to which no specific objections are made do not require de

novo review; the Court need only determine whether the Report and

Recommendation is clearly erroneous or contrary to law.  United States v. Wilson,

864 F.2d 1219, 1221 (5th Cir. 1989).

II.     Motion for Summary Judgment

Summary judgment is granted under Federal Rule of Civil Procedure

56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any

genuine issue of material fact.  Id. at 323.  If the moving party meets this burden,

the non-moving party must come forward with specific facts that establish the

existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding &

Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact

issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

Defendant's Motion for Summary Judgment seeks summary judgment on all of Plaintiffs' claims. Defendant asserts that summary judgment is warranted on Plaintiffs' § 1983 claim because Plaintiffs cannot establish that any constitutional violation occurred. (MSJ at 4–7.) Defendant points out that, subject to certain exceptions, the state generally cannot be held liable for harm caused by private actors, and Plaintiffs have failed to establish that any special exception applies in this case. (Id. at 5.) Defendant further contends that it cannot be held liable because Plaintiffs cannot establish that an official policy or custom of the

7

school district was the cause in fact of Plaintiffs' injuries.  (Id. at 7.)  As for

Plaintiffs' FAPE claims under § 504 and the IDEA,[1] Defendant asserts that they

were settled and released pursuant to the Settlement Agreement between the

parties; that Plaintiffs have failed to exhaust administrative remedies; that § 504

claims may not be appealed to the federal courts; and, finally, that Plaintiffs cannot

establish that M.J. was harassed because of his disability or that Defendant was

deliberately indifferent to any such harassment.  (Id. at 9–20.)

        In their Response in Opposition, Plaintiffs argue that their FAPE

claims are not barred by the Settlement Agreement and that the agreement itself

establishes that Plaintiffs have exhausted their administrative remedies.  (Opp. at

5–7.)  Plaintiffs assert that § 504 hearings are, in fact, subject to judicial review (id.

at 7–9), and that Plaintiffs have produced sufficient evidence to establish a claim

under § 504 based on both peer harassment related to M.J.'s disability and on the

school district's gross mismanagement of M.J.'s educational plan (id. at 9–10).

Plaintiffs also maintain that Defendant is subject to "pure statutory liability" under

§ 1983; that Defendant is liable for student-on-student harassment by virtue of the

_____

        [1] As the Court will discuss in more detail below, Plaintiffs' Complaint does
not state any claims for relief under the IDEA.  MISD erroneously characterizes
Plaintiff's claim regarding mismanagement of his Individual Education Program
("IEP") as an IDEA claim, when in fact it is brought under § 504.

"special relationship" and "state-created danger"exceptions; and, finally, that Plaintiffs' injuries are traceable to Defendant's specific policies.  (<u>Id.</u> at 14–20.)

After Plaintiffs filed their Response, Defendant filed a Motion to Strike Plaintiffs' Response and Objections to Plaintiffs' Summary Judgment Evidence.  (Doc. # 51.)  Defendant asked the Court to strike Plaintiffs' Response—which was filed one day late—as untimely.  (<u>Id.</u>)  Defendant also asked the Court to strike certain of Plaintiffs' summary judgment evidence, which Defendant characterized as hearsay.  (<u>Id.</u>)

The Magistrate Judge denied Defendant's Motion to Strike Plaintiffs' Response and sustained Defendant's objections to Plaintiffs' summary judgment evidence, observing that Plaintiffs failed to respond to the objections.  (R&R at 14–15.)  With respect to Plaintiffs' § 1983 claim, the Magistrate Judge concluded that Plaintiffs could not establish that Defendant had violated any constitutional duty, because state actors generally do not have a duty to protect individuals from the acts of non-state actors and Plaintiffs had not raised any genuine issues of material fact regarding the "special relationship" or "state-created danger" exceptions to the general rule.  (R&R at 25.)  The Magistrate Judge therefore recommended that Defendant's Motion for Summary Judgment be granted insofar as it sought summary judgment on Plaintiffs' § 1983 claim.  (<u>Id.</u>)

With respect to Plaintiffs' IDEA and § 504 claims,[2] the Magistrate Judge concluded that the Settlement Agreement entered into by the parties did not release any and all FAPE claims, as Defendant maintained.  (R&R at 30.) However, the Magistrate Judge found that Plaintiffs failed to demonstrate that they had exhausted their administrative remedies with respect to § 504 or IDEA claims concerning M.J.'s educational placement and the provision of FAPE.  (R&R at 33.) The Magistrate Judge went on to conclude that Plaintiffs have a right to challenge a § 504 hearing officer's decision in federal court, and therefore denied Defendant's motion to dismiss for lack of jurisdiction.  (R&R at 37.)  Addressing Plaintiffs' claim of disability discrimination under § 504, the Magistrate Judge found that Plaintiffs had shown that there is a genuine issue of material fact with respect to whether M.J. was bullied or harassed because of his disability.  (R&R at 46.) Finally, the Magistrate Judge concluded that Plaintiffs had failed to establish that Defendant reacted to M.J.'s complaints with deliberate indifference.  (R&R at 53.) The Magistrate Judge therefore recommended that Defendant's Motion for

---

[2]  Like Defendant, the Magistrate Judge appeared to assume that Plaintiffs' § 504 gross misjudgment claim was in fact an IDEA claim.  The Magistrate Judge's confusion was understandable, given that <u>Stewart v. Waco Independent School District</u>, 711 F.3d 513 (5th Cir. 2013), which substantially clarified the law in the Fifth Circuit regarding § 504 "gross misjudgment" claims and administrative exhaustion of the same, had not been decided when the Magistrate Judge's Report and Recommendation was issued (doc. # 53).

Summary Judgment be granted insofar as it sought summary judgment on Plaintiffs' § 504 claim.  (Id.)

Plaintiffs do not object to the Magistrate Judge's finding that the parties' Settlement Agreement does not bar FAPE-related claims (R&R at 30), the Magistrate Judge's recommendation that Plaintiffs have a right to challenge a § 504 hearing officer's decision in federal court (R&R at 37), or the Magistrate Judge's recommendation that there exists a genuine issue of material fact as to whether M.J. was bullied and harassed because of his disability (R&R at 46). Accordingly, after careful consideration, the Court adopts those recommendations.

Plaintiffs do, however, object to a number of the Magistrate Judge's findings.  First, Plaintiffs object to the Magistrate Judge's recommendation "regarding the testimony of Kelly Hetzer" but decline to "write separately on this point," instead referring the Court to their Response previously submitted on that issue.  (Obj. at 2.)  Plaintiffs are referring to an Order issued by the Magistrate Judge on August 31, 2012, which granted in part and denied in part Defendant's Motion to Exclude the Expert Testimony of Kelly Hetzer (doc. # 38).  (Doc. # 44.) That August 31, 2012 Order is unrelated to the Magistrate Judge's Report and Recommendation regarding Defendant's Motion for Summary Judgment, and Plaintiffs did not object to the Order in a timely fashion.  Accordingly, the Court

will not address that objection.

Next, Plaintiffs object to the Magistrate Judge's recommendation that their § 1983 claim be dismissed.  Plaintiffs decided not to "write separately on this point," instead "solely rely[ing]" upon their Response previously submitted on that issue (doc. # 50).  (Obj. at 2.)  Finally, Plaintiffs object to the Magistrate Judge's recommendation that their § 504 claim be dismissed.  (Id. at 3.)  Specifically, Plaintiffs assert that the Magistrate Judge erred in determining that Defendant was not "deliberately indifferent," and by failing "to recognize the various responses of school personnel, were minimal and thus both individually and cumulatively, grossly ineffective."  (Id.)

At the hearing on April 18, 2013,  Plaintiffs voluntarily dismissed their § 1983 claim against MISD.  Accordingly, that claim is dismissed.  The Court will therefore review de novo only the portions of the Magistrate Judge's Report and Recommendation addressing Plaintiffs' § 504 claims.

I.    Plaintiffs' § 504 Claims

Section 504 of the Rehabilitation Act of 1974 states:

No otherwise qualified individual with a disability in the United
States, as defined in section 705(20) of this title, shall, solely by
reason of her or his disability, be excluded from the participation in,
be denied the benefits of, or be subjected to discrimination under any
program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a).  Here, Plaintiffs assert that Defendant violated M.J.'s rights

under § 504 by failing to prevent or remedy the alleged harassment by M.J.'s

peers.  Neither the Supreme Court nor the Fifth Circuit has held that a recipient of

federal educational funds can be held liable in a private damages action arising

from student-on-student harassment under § 504.  However, in <u>Davis v. Monroe</u>

<u>County Board of Education</u>, the Supreme Court held that recipients of federal

funding may be held liable under Title IX of the Education Amendments of 1972[3]

> only where they are deliberately indifferent to . . . harassment, of
> which they have actual knowledge, that is so severe, pervasive, and
> objectively offensive that it can be said to deprive the victims of
> access to the educational opportunities or benefits provided by the
> school.

526 U.S. 629, 650 (1999).  Because of the similarity between Title IX and § 504,

many federal courts to address the issue of peer-on-peer harassment under § 504

have applied the framework enunciated by the Supreme Court in <u>Davis</u> to such

claims.  <u>See</u> <u>S.S. v. E. Ky. Univ.</u>, 532 F.3d 445, 453 (6th Cir. 2008) ("<u>Davis</u> . . .

has been applied to disability-based peer-on-peer harassment claims brought under

the ADA and § 504 by the majority of federal district courts to have addressed the

---

[3] Title IX states: "No person in the United States shall, on the basis of sex,
be excluded from participation in, be denied the benefits of, or be subjected to
discrimination under any education program or activity receiving Federal financial
assistance. . . ."  20 U.S.C. § 1681(a).

issue.").

The Fifth Circuit, however, has never applied the <u>Davis</u> framework to a disability-based peer-on-peer harassment claim.  Recently, in <u>Stewart v. Waco Independent School District</u>, 711 F.3d 513, 519 (5th Cir. 2013), the Fifth Circuit discussed the viability of such a cause of action.  In that case, the plaintiff argued that she had stated a § 504 claim "under a theory of liability analogous to that applied to student-on-student sexual harassment claims under Title IX. . . ."  <u>Id.</u> The court acknowledged that the Sixth Circuit has endorsed that approach, and observed that it "appears consonant with [the Eighth Circuit's] bad-faith and gross-misjudgment standard, and also comports with the high standard applied in the context of a state actor's liability for constitutional claims based on third-party harms."  <u>Id.</u>  However, it declined to decide whether the plaintiff's theory of liability was viable, finding that "[e]ven if [the plaintiff's] Title IX-like theory of disability discrimination [was] actionable, she fail[ed] to plead facts sufficient to state such a claim."  <u>Id.</u>

Whether a school's inadequate response to disability-based peer-on-peer harassment is actionable under § 504 is, therefore, a matter of first impression in this circuit.  However, as noted above, numerous courts have recognized a cause of action for peer-on-peer harassment under § 504, and have applied the <u>Davis</u>

14

framework to such claims.  See, e.g., E. Ky. Univ, 532 F.3d at 453–54; Moore v. Chilton Cnty. Bd. of Educ., ---F. Supp. 2d---, 2013 WL 1278525, at *12 (M.D. Ala. Mar. 27, 2013); D.A. v. Meridian Joint Sch. Dist. No. 2, ---F.R.D.---, 2013 WL 588761, at *12–13 (D. Idaho Feb. 12, 2013); Werth v. Bd. of Dirs. of the Pub. Sch. of Milwaukee, 472 F. Supp. 2d 1113, 1127 (E.D. Wis. 2007); K.M. ex rel. D.G. v. Hyde Park Centr. Sch. Dist., 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005); Biggs v. Bd. of Educ. of Cecil Cnty., Md., 229 F. Supp. 2d 437, 444–45 (D.Md. 2002).  In Stewart, the Fifth Circuit signaled approval of that approach without adopting it.  711 F.3d at 519.  This Court concludes that a school may be held liable under § 504 for failing to remedy disability-based peer-on-peer harassment, and determines that such claims are properly analyzed according to the Davis framework.[4]

In Eastern Kentucky University, the Sixth Circuit articulated the following five-part test that must be met in order to impose liability for disability-based peer-on-peer harassment:

> (1) the plaintiff is an individual with a disability, (2) he or she was
> harassed based on that disability, (3) the harassment was sufficiently

---

[4]  The Court notes that neither party disputes that a school's inadequate response to disability-based peer-on-peer harassment is actionable under § 504, and both assume that Davis's deliberate-indifference standard should be applied to Plaintiffs' harassment claim.  (See MSJ at 14; Opp. at 9.)

severe or pervasive that it altered the condition of his or her education
and created an abusive educational environment, (4) the defendant
knew about the harassment, and (5) the defendant was deliberately
indifferent to the harassment.

532 F.3d at 454 (quoting <u>Werth</u>, 472 F. Supp. at 1127). While not bound by the

Sixth Circuit test, this Court finds it both useful and in accord with the spirit of the

law. Thus, in this case, Plaintiffs must prove that: (1) M.J. was an individual with

a disability; (2) he was harassed because of his disability; (3) the harassment was

so severe or pervasive that it altered the conditions of M.J.'s education and created

an abusive educational environment; (4) MISD knew about the harassment; and (5)

MISD reacted with deliberate indifference.

Defendant does not dispute that the first prong is satisfied. As for the

second prong, the Magistrate Judge found a genuine issue of material fact

regarding whether M.J. was harassed, at least in part, due to his disabilities. (R&R

at 46.) Defendant did not object to this finding, and the Court is convinced that it

is correct. M.J.'s deposition testimony indicates that he was frequently called

names like "stupid," "dumb ass," "retard," "idiot," "special ed," and "psycho."

(Doc. # 46 Exs. 10–12 ("M.J. Dep.") at 15:5, 69:23, 100:23, 102:4, 195:8). M.J.

testified that his classmates made fun of him for being in a special needs classroom

(M.J. Dep. at 172:22–23) and told him: "[Y]ou're so dumb . . . you're worthy of

suicide" (id. at 80:6–7).  This evidence demonstrates that there exists a question of fact as to whether M.J. was harassed because of his disabilities, rather than on the basis of some "personal animus."  Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 165 (5th Cir. 2011).

Defendant focuses the majority of its argument on the fifth prong of the five-part test.  According to Defendant, Plaintiffs cannot establish that Defendant reacted with deliberate indifference to harassment of which it was aware.  The Fifth Circuit has observed that "[d]eliberate indifference is an extremely high standard to meet."  Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001).  "[A] school district's 'response to the harassment or lack thereof [must be] clearly unreasonable in light of the known circumstances,' such that the district's actions subjects the victim to further discrimination." Stewart, 711 F.3d at 520 (internal citation omitted) (quoting Davis, 526 U.S. at 648–49).  "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."  Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998).  Contrary to Plaintiffs' argument that "issues of deliberate indifference are best left to the province of the jury" (Obj. at 9), the Supreme Court itself noted in Davis that "there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed

17

verdict could not identify a response as not 'clearly unreasonable' as a matter of law."  526 U.S. at 649.

Here, the evidence demonstrates that the school district's response to M.J.'s complaints was generally <u>not</u> clearly unreasonable.  To support its Motion for Summary Judgment, Defendant submitted a detailed Evidentiary Summary of Material Facts, which cited primarily to M.J.'s own deposition testimony.  (Doc. # 46 Ex. 1.)  According to M.J.'s deposition testimony, he complained frequently to teachers and staff members throughout the 5th, 6th, 7th, 8th, and 9th grades about alleged discriminatory acts.  (<u>See</u> M.J. Dep.)  On most occasions, the school took some remedial action.  For example, in the 5th grade M.J. reported to "someone"—possibly Ms. Rutledge (M.J. Dep. at 27:17–25)—that D.G. had punched him in the stomach and called him names, and Ms. Rutledge called D.G. into her office (<u>id.</u> at 28:3–4).  M.J. testified that he didn't "know what happened from there" (<u>id.</u>) but the bullying by D.G. stopped before his 6th grade year (<u>id.</u> at 26:21–25).  In the 6th grade, M.J. testified that during gym class, S.S. would whip towels and throw insects at him and call him names like "stupid," "retard," and "dumbass."  (<u>Id.</u> at 69:15–23.)  M.J. reported that S.S. was picking on him to Coach Wade, who called S.S. into his office and "yelled at him so loud that everyone could hear."  (<u>Id.</u> at 72:1–13.)  When the situation didn't stop, Coach

18

Wade "would just separate [M.J.] from everybody." (Id. at 73:17–23.)  In the 7th

grade, M.J. testified that he reported to teacher Amy Zwicke that A.G. was

"messing with him." (Id. at 102:10–25, 103:1–11.)  Ms. Zwicke reported it to the

front office, and M.J. believed the front office called A.G. in because later A.G.

was asked over the loud speaker to come to the front office, and when he returned

he "seemed kind of upset with [M.J.]." (Id. at 103:6–11.)  The vast majority of

M.J.'s complaints were addressed in similar ways, with some action taken by the

school's employees to address or remedy the situation.  The fact that the remedies

failed to put an end to the incidents between M.J. and some of his peers is not

evidence that the school was deliberately indifferent; merely marginally effective

actions do not expose a school district to liability.

However, on some occasions, MISD failed to respond to M.J.'s

complaints at all.  In the 9th grade, M.J. recalls that A.B. would "pop" him on the

back of the head with his ring during math lab about once or twice a week. (Id. at

153:20–25, 154:16–18.)  M.J. claims that when he would tell Ms. Paschal, his math

teacher, and ask her if he could go to ABLE, an area at school designated by his

Individualized Education Program ("IEP") as a place for him to cool off (Compl.

¶ 158), she would say "no, sit down and get to work." (Id. at 154:4–5.)  M.J.

testified that he mentioned A.B. by name to Ms. Paschal, and told her "how [A.B.]

19

would mess with [him] and everything."  (Id. at 154:23–24.)  According to M.J.,

Ms. Paschal would say "I don't care.  Just sit down and get to work."  (Id. at

154:24–25.)  On another occasion, in the same class, A.B. came up behind M.J.

and started "choking him," and it "became a huge altercation," but all Ms. Paschal

did was say "Michael, get out of the classroom," and send him to ABLE.  (Id. at

155:1–14.)

        M.J. also testified that two weeks prior to the assault that led to his

withdrawal from the school, he told the teachers and administrators at a February

2009 Admission, Review and Discharge ("ARD") Committee Meeting that A.B.

was bullying him in math lab, but they "just went to something else" and "tried to

get [him] off subject."  (Id. at 204:4–11.)  In a declaration filed with the Court just

prior to the April 18, 2013 hearing, M.J. again asserted that he "complained to

everyone [at the February 2009 ARD meeting] about how [he] was being harassed

by A.B.," and "mentioned all of the problems [he] was having in math lab and how

the other kids harassed [him] constantly," but the ARD Committee members

simply "brushed [his] comments off. . . ."  (Doc. # 66 Ex. 1.)

        Defendant argues that Ms. Paschal's response to M.J.'s complaints in

math lab was appropriate, asserting that each time an incident occurred she

"allowed M.J. to go to ABLE (his 'cool off' place) or sent him there."  (Doc. # 68

at 3.)  It is true that when A.B. choked M.J., Ms. Paschal sent M.J. to ABLE—a decision that, perhaps understandably, seemed unfair to M.J., but probably did not amount to deliberate indifference; after all, the teacher took affirmative steps to end the altercation.  However, according to M.J.'s testimony, when he complained about A.B. "popping" him on the head with his ring, Ms. Paschal would say "I don't care.  Just sit down and get to work."  (Id. at 154:24–25.)  The Court is sensitive to the fact that it must "refrain from second-guessing the disciplinary decisions made by school administrators."  Davis, 526 U.S. at 648.  However, if M.J.'s deposition testimony is true—and the Court must assume that it is—Ms. Paschal's lack of response may amount to deliberate indifference.

Defendant also contends that there is no evidence that the specific instances of bullying M.J. was subjected to by A.B. in math lab were motivated by M.J.'s disability.  Admittedly, there is nothing about choking a classmate or hitting him on the head with a ring, viewed in isolation, that would suggest that such actions are disability-related.  However, according to M.J.'s deposition testimony, A.B.'s actions were part of a larger pattern of "getting picked on" in math lab.  (M.J. Dep. at 153:18–19.)  M.J. testified that his loud conversations with Ms. Paschal about going to ABLE exacerbated problems with his classmates in math lab: "I would have to make this conversation in front of – in front of the whole class

and that's why everybody called me special ed, retard, stuff like that. . . ." (Id. at

154:5–10.)  And M.J. stated that because of the harassment he suffered in math lab,

he kept his "head down because [he] didn't see the point of even learning with all

these kids that made fun of you in there if you get the wrong answer or something."

(Id. at 155:6–9.)  This testimony suffices to demonstrate the existence of a genuine

issue as to whether A.B.'s actions were related to M.J.'s disabilities.

Furthermore, this testimony, as well as other evidence, establishes that

there exists a fact question regarding the third prong of the five-part test—that the

disability-based harassment was so severe and pervasive as to effectively deny M.J.

equal access to MISD's resources and opportunities.  Davis, 526 U.S. at 651.  By all

accounts, M.J. was struggling in Ms. Paschal's math lab.  Ms. Paschal herself e-

mailed M.J.'s mother to tell her that M.J. was "having a difficult time working in

math lab," didn't participate, "work problems, or even attempt to work them

mentally." (Doc. # 68 Ex. E-1.)  M.J. failed to answer any questions on the 8th

grade assessment for math, earning a score of 0 out of 40.  (Id. Ex. F.)  M.J. claims

that he didn't even try to learn in math lab because his classmates would make fun

of him for getting wrong answers.  (Id. at 155:6–9.)  Based on this testimony, a

reasonable jury could find that the bullying M.J. experienced in Ms. Paschal's

classroom was sufficiently severe and pervasive to alter the conditions of M.J.'s

education.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,'

that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.").

Finally, Defendant argues that M.J.'s testimony about his exchange

with administrators at the February 2009 ARD meeting does not demonstrate that

the school reacted to his complaints with deliberate indifference.  Defendant points

out that M.J. does not claim to have reported disability-based harassment

specifically, and, in any event, there is no evidence that the school did not respond

to M.J.'s alleged complaints at the ARD meeting.  The latter argument is meritless;

at this stage, Defendant carries the burden of establishing the absence of any

genuine issue of material fact regarding its own deliberate indifference.  If

Defendant does not meet that burden—for example, by showing that it did take

action in response to M.J.'s complaints at the February 2009 ARD

meeting—Plaintiffs are under no obligation to come forward with evidence

showing that MISD's response was nonexistent or inadequate.  Indeed, it would be

difficult for Plaintiffs to prove a negative.  With respect to the former argument, the

Court concludes that M.J.'s deposition testimony and declaration suffice to

establish the existence of a fact question.  M.J. claims that he reported A.B.'s

23

harassment in math lab to the ARD Committee and, as discussed above, there is a genuine issue of fact as to whether "A.B.'s harassment" was based on M.J.'s disability.

Accordingly, Plaintiffs have established that there is a genuine issue for trial as to each element of their § 504 disability-based peer-on-peer harassment claim.  M.J. claims to have repeatedly reported harassment by A.B. to Ms. Paschal, and she apparently failed to take any action on numerous occasions.  M.J. also claims to have complained of the same harassment at the February 2009 ARD meeting, to no avail.  There exists a fact question regarding whether A.B.'s harassment was motivated by M.J.'s disability, and whether the harassment was sufficiently severe and pervasive enough to impose liability on the school.  The Court therefore vacates the Magistrate Judge's recommendation and **DENIES** Defendant's Motion for Summary Judgment insofar as it seeks summary judgment on Plaintiffs' § 504 claim alleging peer-on-peer harassment.

Plaintiffs also asserted in their Complaint that Defendant's failure to develop an IEP commensurate with M.J.'s unique needs rises to the level of gross mismanagement of his education plan and constitutes a violation of § 504.  (Compl. ¶ 188.)  The Fifth Circuit has recognized that a school district may be liable under § 504 for exercising gross misjudgment in managing a disabled student's IEP.

24

Stewart, 711 F.3d at 524.  The deliberate-indifference doctrine imposes liability on a school district for so failing to adequately respond to student-on-student harassment that its own conduct effectively subjects the student to further discrimination.  The "gross misjudgment" doctrine, on the other hand, is in effect "a species of heightened negligence"; it imposes liability on a school district for failing to exercise professional judgment in response to changing circumstances and new information.  Id.  A school is liable only when its "continued use of ineffective or inadequate methods . . . becomes 'such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'"  Id. at 526 (quoting Monahan v. Neb., 687 F.2d 1164, 1171 (8th Cir. 1982)).

In Stewart, the Fifth Circuit found that the plaintiff had plausibly stated a claim that the defendant school district had "committed gross misjudgment in failing to implement an alternative approach once her IEP modifications' shortcomings became apparent."  711 F.3d at 526.  In that case, the plaintiff suffered from mental retardation, speech impairment, and hearing impairment.  Id. at 517.  After an incident involving sexual contact between the plaintiff and a male student, the school district modified the plaintiff's IEP to ensure that she was kept separate from male students while at school.  Id.  Nevertheless, the plaintiff was

25

involved in three more incidents involving sexual contact with a male student over the next two years.  Id.  Given that the IEP was plainly ineffective in preventing the conduct it sought to prevent, the Court concluded that it was plausible that failing to further modify the IEP under such circumstances "grossly depart[ed] from standard educational practice."  Id. at 526.

MISD initially mistook Plaintiffs' § 504 gross misjudgment claim for a claim arising under the IDEA.[5]  (See MSJ at 9 ("Plaintiffs attempt to bring claims directly arising under the IDEA, alleging 'the failure of the school district to develop an Individualized Education Plan, commensurate with [M.J.'s] unique and individualized needs, rises to the level of a gross mismanagement of his education plan and is also a violation of Section 504 thereby.'") (quoting Compl. ¶ 188).)  As a result, MISD did not address the merits of Plaintiffs' § 504 gross misjudgment claim in its Motion for Summary Judgment, arguing only that Plaintiffs have relinquished the right to pursue claims arising under the IDEA pursuant to the Settlement Agreement.  (MSJ at 10–11.)

---

[5]  The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs. . . ."  20 U.S.C. § 1400(d)(1)(A).  Participating states must provide eligible students with a free appropriate public education that conforms to an IEP.  20 U.S.C. § 1412(a)(4).

In their Response, Plaintiffs point out that MISD failed to address their gross misjudgment claim under § 504, and argue that the claim should therefore survive Defendant's Motion for Summary Judgment.  (Opp. at 10.)  In its Reply, MISD asserts that there is no such cause of action under § 504 (Reply at 2–3), and in any event Plaintiffs have exhausted their administrative remedies <u>only</u> with respect to claims concerning disability-related harassment and discrimination, not with respect to claims concerning the provision of educational services (<u>id.</u> at 2).

MISD's first argument for dismissal of Plaintiffs' gross misjudgment claim is erroneous.  The Fifth Circuit has made clear that a disabled student may state a § 504 claim based on a school district's gross misjudgment in managing the student's IEP.[6]  <u>Stewart</u>, 711 F.3d at 523; <u>D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.</u>, 629 F.3d 450, 455 (5th Cir. 2010) ("[F]acts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 . . . against a school district predicated on a disagreement over compliance with IDEA.").

With respect to Defendant's second argument, the Court cannot

---

[6]  The Court is aware that <u>Stewart</u>, which clarified the nature of a § 504 claim for gross misjudgment in this circuit, was decided only last month—months after Defendant filed its Motion for Summary Judgment.  However, <u>D.A.</u> clearly recognized a § 504 claim for gross misjudgment, and was decided in 2010.  629 F.3d at 455.

conclude as a matter of law that Plaintiffs were required to exhaust their § 504

claim before seeking relief in this Court.  It is true that plaintiffs must

administratively exhaust § 504 claims if they "seek[] relief that is also available

under" the IDEA.  20 U.S.C. § 1415(l).  The IDEA generally provides

"compensatory or prospective forms of educational relief or related services,"

Stewart, 711 F.3d at 529, that "may be required to assist a child with a disability to

benefit from special education," 20 U.S.C. § 1401(26)(A).  In Stewart, the Fifth

Circuit found that the plaintiff, seeking damages for past and future mental and

physical pain and anguish, physical impairment, and medical and mental health

expenses, did not appear to be seeking damages "as a substitute for relief under the

IDEA."  711 F.3d at 530 (internal quotation marks omitted) (quoting Payne v.

Peninsula Sch. Dist., 653 F.3d 863, 875 (9th Cir. 2011) (en banc)).  The court noted

that "the IDEA's administrative remedies, oriented as they are to providing

prospective educational benefits, [cannot] possibly begin to assuage . . . severe

physical, and completely non-educational, injuries."  Stewart, 711 F.3d at 530

(internal quotation marks omitted) (quoting Padilla ex rel. Padilla v. Sch. Dist. No.

1 in City & Cnty. of Denver, Colo., 233 F.3d 1268, 1274 (10th Cir. 2000)).

       In this case, Plaintiffs seek monetary damages for physical and mental

pain and anguish in the past; medical and mental health expenses in the past and

future; physical impairment in the past; and out-of-pocket expenses incurred by

M.J.'s parents.  (Compl. ¶ 207.)  To the extent Plaintiffs seek damages to

compensate for the non-educational mental and physical injuries M.J. suffered as a

result of MISD's alleged conduct, they need not have exhausted their § 504 claim.

However, if the "out-of-pocket expenses" sought by Plaintiffs include, for example,

the cost of a private school education for M.J., Plaintiffs must administratively

exhaust their claims through the IDEA's administrative scheme.  See Payne, 653

F.3d at 875 (noting that if a disabled student "seeks damages for the costs of a

private school education, the IDEA requires exhaustion" because in that case "relief

. . . is also available" under the IDEA) (quoting 20 U.S.C. § 1412(a)(1)).

Accordingly, the Court vacates the Magistrate Judge's finding that Plaintiffs failed

to exhaust their administrative remedies with respect to § 504 claims concerning

"identification, evaluation, or educational placement of [M.J.]."  (R&R at 33

(quoting Doc. # 46 Ex. 5).)

MISD failed to put forward any evidence demonstrating the absence of

any genuine issue of fact with respect to Plaintiffs' § 504 claim for gross

misjudgment.  Accordingly, Defendant has not met its summary judgment burden,

and the Court **DENIES** Defendant's Motion for Summary Judgment insofar as it

seeks summary judgment on Plaintiffs' § 504 gross misjudgment claim.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DISMISSES** Plaintiffs' § 1983 claim and **DENIES** Defendant's Motion for Summary Judgment insofar as it seeks summary judgment on Plaintiffs' § 504 claims.

IT IS SO ORDERED.

DATED: San Antonio, Texas, May 3, 2013.

_____
David Alan Ezra
Senior United States District Judge

30